[No. 1828]

CHARLES H. BOTSFORD, APPELLANT, *v.* L. C. VAN RIPER, JOSEPH HUTCHINSON, JAMES DAVIS, J. P. LOF-TUS AND JAMES DAVIS, DOING BUSINESS UNDER THE FIRM NAME OF LOFTUS & DAVIS; GOLDFIELD MOHAWK MINING COMPANY, GOLDFIELD CON-SOLIDATED MINES COMPANY, COMBINATION MINES COMPANY, GEORGE S. NIXON AND GEORGE WINGFIELD, RESPONDENTS.

1. APPEAL AND ERROR—DISMISSAL—CURING DEFECTS—PENDING MOTION.

Where appellant, pending motion by respondent to dismiss appeal for defects in the record, obtains a correction of the record pursuant to an order of court, the motion will be denied, as Supreme Court Rule No. 7 providing that, to correct an error in the transcript either party may suggest the same, and obtain an order that the clerk certify to the whole or any part of the record, has been substantially complied with.

2. APPEAL AND ERROR—DEFECTS—RECORD—WAIVER.

By numerous stipulations between the parties extending the time in which to file briefs, which reserved no right to object to the suf-ficiency of the record, respondent waived his right to move to dismiss or strike matter from the record on any grounds that are not juris-dictional.

3. APPEAL AND ERROR—RECORDS—MATTERS TO BE INCLUDED.

The record, on appeal from any order denying a new trial, should contain only such papers as were used or referred to on the hearing of the motion.

4. APPEAL AND ERROR—BONDS—SURETY COMPANY BONDS.

The act of February 26, 1887 (Stats. 1887, p. 86, c. 84), as amended by Stats. 1903, p. 63, c. 42, provides that any surety company shall, on satisfactory evidence of solvency and credit, be accepted as surety on the bond of any person, corporation, or officer required by law to execute the bond, and no additional surety may be exacted in the dis-cretion of the official authorized to approve the same. *Held*, that an appeal bond executed by a surety company and duly approved is valid, and takes the place of a bond in accordance with Comp. Laws, 3436, 3443, requiring an undertaking on appeal to be furnished by two sureties.

5. APPEAL AND ERROR—APPEAL BONDS—SURETIES—REPEAL BY IMPLICA-TION—ACTS RELATING TO SAME SUBJECT.

The act of February 26, 1887 (Stats. 1887, p. 86, c. 84), as amended by Stats. 1903, p. 63, c. 42, authorizing the giving of bonds executed by a surety company as surety, is a general law, and does not repeal the provisions of the civil practice act (Comp. Laws, 3436, 3443) for under-takings on appeal, but only provides an additional method of furnish-ing such undertakings at the option of appellant.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *J. P. O'Brien*, Judge.

Action by L. C. Van Riper and another against Charles H. Botsford and others. From the judgment rendered, defendant Botsford appeals. Heard on motion to dismiss appeal and to strike out certain portions of the record. **Motion to dismiss denied, and record as amended allowed to stand.**

The facts sufficiently appear in the opinion.

*Rufus C. Thayer, C. L. Harwood, James F. Peck, Solinsky & Wehe*, and *Paul C. Morf*, for Appellant:

I. The objections to the judgment may be summed up as follows:

1st, the judgment is contrary to law.

2d, the judgment is contrary to the facts found by the court.

3d, the facts of the case, as found by the court, will not sustain any part of the judgment.

4th, the judgment is not supported by the‚pleadings in the case.

5th, the judgment is not warranted by the facts and form of the action.

6th, the judgment rendered is upon issues not made by the pleadings.

7th, the plaintiffs have not alleged any right in themselves to entitle them to the specific recovery of property, and the complaint sets forth no cause of action to warrant any of the relief administered by the court.

8th, the complaint sets forth no cause of action either at law or in equity.

The plaintiffs have no title to nor interest in the stock, as property, so as to enable them to maintain a proprietary or possessory action for its specific recovery. Obviously, under the contract alleged, the plaintiffs can stand in the specific relation of legal or equitable owners to the stock in question only on the theory that the contract created the relation of partners or joint owners between the plaintiffs and this appellant, or that some principle of equity intervenes which

will make the plaintiffs equitable owners, and the appellant a trustee of the legal title, of a portion of the stock.

II. The contract did not create a partnership. The plaintiffs do not in their complaint characterize the relations between themselves and appellant under the alleged contract. The complaint does not allege, and the court does not find, that they were copartners. The contract alleged in the complaint does not disclose an intent to create the relation of copartners on the part of either the plaintiffs or the appellant. They agreed to use their joint efforts to get an option and to sell it. That is not equivalent to an agreement to become partners in the transaction. They simply agreed that they should use their individual efforts jointly. The purpose was a joint purpose; but in accomplishing it each assumed a several duty to the others, whose duties in turn were several and owing to the individual associates, and not to the legal entity or to a firm. To constitute a partnership, every partner must be principal of and agent for each of the others, with general powers within the scope of the business.

It is manifest from the foregoing that no partnership existed, and that the relations of the parties were those of joint adventurers uniting their several efforts and interests for a common purpose. (*Simmons* v. *Lima Oil Co.*, 63 Atl. 258; *Warwick* v. *Stockton*, 55 N. J. Eq. 61, 36 Atl. 488; *Coward* v. *Clanton*, 122 Cal. 451; *Wild* v. *Davenport*, 48 N. J. Law, 129, 7 Atl. 295; *Nuttings* v. *Colt*, 7 N. J. Eq. 539; *Brotherton* v. *Gilchrist*, 107 N. W. 890; *Bridge Co.* v. *City of Eaton Rapids*, 65 N. W. 761; *Petri* v. *Torrent*, 49 N. W. 1080; *Mason* v. *Hackett*, 4 Nev. 425.) A joint adventure exists where two or more combine their energies or capital in a single enterprise. (*Stotts* v. *Miller*, 105 N. W. 127; *Church* v. *Odell*, 100 Minn. 98, 110 N. W. 446, 23 Cyc. 452.)

III. There is no community of property, nor a joint ownership. In the case of a joint adventure there is a common purpose; but no community of interest or of property is required. Thus, if the contract of the parties binds all of them to contribute an equal portion of capital and expenses, such contribution may be enforced by one of the associates, who had advanced more than his share, against another, who

has not fully paid in his proportion. (23 Cyc. 457, and cases under note 79.) But in the absence of a special contract to that effect (there is none in this case), the law will presume that the one making an advance for the joint enterprise has agreed to wait for reimbursement out of the profits (*Bell* v. *McAboy*, 3 Brewst. 81, 23 Cyc. 457, under note 78); and such reimbursement cannot be insisted upon until completion of the transaction. (*Williams* v. *Hinshaw*, 11 Pick. 79, 22 Am. Dec. 366.)

IV. Equity could not operate in this case to make the plaintiffs equitable owners of any of the stock. Under the foregoing view of the case it becomes extremely difficult to find some theory upon which to predicate any proprietary right or interest of the plaintiffs in any part of the stock, such as would sustain an action of this kind, or any part of the judgment rendered by the court. The contract to share in the profits could not operate *ipso facto* as an equitable assignment of future profits for obvious reasons. That would require an absolute appropriation by the assignor of the debt to the use of the assignee. It would require an intent to transfer a present interest, and an irrevocable surrender of all control. (4 Cyc. 45, 47, and cases cited.) This doctrine is manifestly inapplicable to a contract such as is alleged in the complaint. Moreover, equity would not operate in that way, if by doing so it would work a fraud, or an injury, or injustice upon any of the parties. To apply this doctrine in this case would deprive the appellant of his right to hold the entire profits until all his advances have been repaid. Again, the contract of the parties was to share the profits, and not the gross receipts. Profits in a joint adventure means net amount after deducting any proper expenses incident to the business. (*Doane* v. *Adams*, 15 La. Ann. 350; *Scott* v. *Clark*, 1 Ohio St. 382; *James* v. *Davidson*, 2 Sneed, 447; *Childberg* v. *Jones*, 3 Wash. 530; *Simmons* v. *Lima Oil Co.*, 63 Atl. 258.) Evidently, the parties by their contract did not intend to presently divide and assign to each other their respective shares in the future gross profits. In case any one of them should make advances, entitling him to reimbursement out of profits subsequently coming into his hands, they hardly meant to agree,

in advance, that he should relinquish his hold on such profits and seek satisfaction of his demand from his associates personally. To so hold would amount to the making of a contract which the parties themselves failed to make, and upon which their minds never met. Again, there are no words of assignment in the contract, which is a mere agreement to share in the profits.

V. Specific performancé does not lie, but it might be claimed that the complaint and decree are in the nature of specific performance. It is sufficient answer to this contention to say that an action for the specific performance of the contract could not be maintained by the plaintiff for five different reasons, if not more, to wit:

(1) The plaintiffs have not performed their part of the contract. They have not paid their share of the outlay. (4 Pomeroy's Eq. Jurisprudence, sec. 1407; 2 Pomeroy's Eq. Remedies, sec. 806.)

(2) When the action was commenced the appellant had not yet received the stock. Clearly he could not deliver it, nor be ordered by the court to deliver it, until it had come into his possession. (4 Pomeroy's Eq. Jurisprudence, sec. 1405.)

(3) The complaint sets forth no ground for the specific performance of this contract, in any particular: (*a*) Equity will not specifically enforce a contract for the delivery of personal property in the absence of a particular showing that compensation in damages is inadequate. (2 Pomeroy's Eq. Remedies, secs. 748, 752; Pomeroy's Eq. Jurisprudence, secs. 221, 1402; *Senter* v. *Davis*, 38 Cal. 454; *Krause* v. *Woodward*, 110 Cal. 638; *Dowling* v. *Bentjeman*, 70 Eng. Rep. 1175; *Nickerson* v. *Chatterton*, 7 Cal. 568; *Glock* v. *Howard Company*, 123 Cal. 6, 9, 11; Pomeroy's Specific Performances, sec. 335.) (*b*) The adequacy of the consideration does not appear and is not pleaded. (*Windsor* v. *Miner*, 124 Cal. 492.) (*c*) It is not alleged and does not appear that the contract as to the defendant is fair and just. (*Stiles* v. *Cain*, 134 Cal. 170; *Bruck* v. *Tucker*, 42 Cal. 346; *Prince* v. *Lamb*, 128 Cal. 120, 128; *Arguello* v. *Banos*, 67 Cal. 447; *Agood* v. *Valencia*, 39 Cal. 292.) (*d*) The contract was not mutual; the plaintiffs had not agreed to contribute capital or to share the losses, if any.

(4) The complaint does not describe the particular stock to be delivered. The contract could not apply to any stock until it was clearly designated, separated and identified. (*McLaughlin* v. *Piatti*, 27 Cal. 451; *Blackwood* v. *Cutting Co.*, 76 Cal. 218; *Carpenter* v. *Glass*, 67 Ark. 139; *Comm. Bk.* v. *Gilette*, 90 Ind. 269, 46 Am. Rep. 223; *New England Co.* v. *Standard Co.*, 165 Mass. 330.)

(5) The alleged insolvency of the appellant (denied by the answer, and not found by the court) is immaterial. (*McLaughlin* v. *Piatti*, 27 Cal. 451; 1 Pomeroy's Eq. Jur. sec. 178; *Finnegan* v. *Fernandina*, 21 Am. R. 292; *Ruse* v. *Bradford*, 13 Ala. 837.) This action being on the theory of fixed and liquidated profits, and in the form of an action to recover the specific property representing the profits, the court had no jurisdiction in this action to adjust and ascertain the profits, and to direct contribution. And having found that the plaintiffs were not entitled to the possession of one-third each of the 45,000 shares, without first paying to the appellant a sum of money, to be ascertained, and which was partially ascertained by the court in this action, the court should have dismissed the action or ordered a reformation of the complaint. (*Lewis* v. *Varnum*, 12 Abb. Prac. 305; 1 Cyc. 415; *Greer* v. *Heiser*, 16 Colo. 306.) A recovery can be had only upon the facts alleged. (11 Ency. Pl. & Pr. 868, 869, and cases cited; *Horton* v. *Ruhling*, 3 Nev. 498.) The allegations of the complaint, the findings and the evidence should correspond in legal intent. (*Tucker* v. *Parks*, 7 Colo. 62, 1 Pac. 427; *Gregory* v. *Haworth*, 25 Cal. 656; *Greer* v. *Heiser*, 16 Colo. 306, 26 Pac. 773.)

VI. Under the common counts no recovery can be had for the breach of a special contract. For "while the common counts are in some cases sufficient under the code, it is safe to say they are insufficient in those cases where they were insufficient under the old system of pleadings. Where a special contract is still open, and has not been rescinded by mutual consent, it is necessary to declare specially." (*Barre* v. *Thompson*, 113 Cal. 97, 101. See, also, 11 Ency. Pl. & Pr. 886, 890–891, 896–898.) We have cited this multitude of authorities and illustrations at the risk, perhaps, of being tiresome. But we feel justified in doing so on account of the vastness of the

interests involved in this appeal, and the great importance to
this appellant of an absolute reversal of the judgment of the
lower court.    He should not be compelled to go to trial upon
the pleadings, as they stand, in a court of equity.    If, how-
ever, the plaintiffs have a grievance in equity, they should be
compelled to fairly and fully state it in the complaint, so that
this appellant by his answer may avail himself of every equity
in his favor, and frame the issues accordingly.    But the court
has no right to convert a legal cause of action into an equita-
ble, because the plaintiff has framed his complaint in equity;
and in this case the lower court should have dismissed the
action when the evidence showed the primary rights of the
plaintiffs under the contract to be a thing in action recover-
able at law as a debt.    (*Lewis* v. *Varnum*, 12 Abb. Prac. 305;
1 Cyc. 415, note 55; 23 Cyc. 461.)

Treating the action as one upon contract, the complaint is
defective because it alleges no breach of contract.    Paragraphs
13 and 14 of the complaint (transcript, pages 1310–1311) do
not show facts from which a breach of contract may be
deduced.    There is no showing that any part of the 100,000
shares to be received by appellant is profit, and unless a profit
is shown, the appellant has a right to refuse to recognize the
plaintiffs as being entitled to any of said stock.    (*Dorr* v.
*McKinney*, 9 Allen, 359; *Simmons* v. *Lima Oil Co.*, 63 Atl. 260,
and cases above.)

VII.    In no event had the lower court any power or juris-
diction to declare a transfer of the stock to the plaintiffs, or to
order any part of it sold to satisfy the amount which the court
directed the plaintiffs to pay to this appellant.    Not having
any interest in, or lien upon, the stock, the plaintiffs had no
right to require, nor the court to order, a transfer and deliv-
ery, or a sale thereof, by process of court or otherwise, to get
the appellant's money out and so wind up the joint account.
This fact must always be regarded in every consideration of
the right of plaintiffs under the contract alleged and found.
The stock remained the stock of the appellant, and it was his
province to say how it should be sold, and to fix the time for
its sale. (*Corbin* v. *Holmes*, 154 Fed. 598; *Dorr* v. *McKinney*, 91
Mass. 362, and cases cited under subdivision 1 of this brief.)

Moreover, the stock not being in the possession of the court, but standing in the name of a stranger to the suit on the books of the corporation, the court had no power to compel a further issue of stock by the corporation. (2 Cook on Corporations, 5th ed. secs. 391, 405; sec. 363, p. 831, note 3; 2 Pomeroy's Eq. Remedies, sec. 1396; *Smith* v. *N. Am. M. Co.*, 1 Nev. 423.)

*Detch & Carney* (*Mack & Green* and *H. Alling* of counsel), for Respondents.

By the Court, SWEENEY, J.:

This is a motion to dismiss the appeal, and also subject thereto a motion to strike certain portions of the record. The record on appeal in this case was filed April 3, 1909. On April 17th following a stipulation, signed by respective counsel, was filed giving appellant until May 5th in which to file their opening brief. On May 3d an additional stipulation was filed, signed by respective counsel, extending the time until May 20th. On May 19th appellants filed their opening brief. On May 31st a stipulation was filed, signed by respective counsel, extending the time thirty days for respondents to file their brief in reply. On June 30th counsel for respondent requested and obtained the order of the chief justice extending counsel for respondent until August 2d to file their brief in reply. On July 2d a stipulation, signed by respective counsel, was filed, extending the time in conformity to the last-mentioned order of the chief justice. On July 17th counsel for respondent filed their motion to dismiss the appeal, and also said motion to strike portions of the record. On July 19th stipulation signed by respective counsel was filed, extending the time for respondents to file their reply brief to November 3d, and that the motions to dismiss and to strike might be set down for hearing before this court on September 20th. On July 24th counsel for appellant filed a notice of motion and affidavit on motion to correct the record, and upon said date obtained an order from the court shortening the time for the service of such notice. On the 30th day of July the said motion to correct the record came on for

hearing before the court, and after argument by respective counsel the court made the following order:

"The motion of the appellant Charles H. Botsford to correct and supply certain errors and defects in the records on appeal herein coming this day regularly on to be heard before this court upon the notice of said motion, written motion and suggestion, and affidavit on motion, on file herein, and upon all the records on appeal herein, and the original papers filed herein as the records on appeal herein, and upon proof of due service of the notice of said motion on file herein, and C. L. Harwood and Paul C. Morf appearing as attorneys for the appellant, and Messrs. Detch & Carney and Messrs. Mack & Green appearing as attorneys for respondents L. C. Van Riper and Joseph Hutchinson, and filing affidavits in opposition to said motion, and good cause appearing therefor, it is hereby ordered, that Joseph Hamilton, the clerk of the district court of the Seventh Judicial District in and for the County of Esmeralda, State of Nevada, be, and he is hereby, directed:

"(1) To certify, in the manner and form and as required by section 3862 of the Compiled Laws of the State of Nevada, the original papers in said district court in that certain action commenced therein, entitled 'L. C. Van Riper and Joseph H. Hutchinson, Plaintiffs, against Charles H. Botsford, James Davis, J. P. Loftus, and James Davis, doing business under the firm name and style of Loftus & Davis, Goldfield Mohawk Mines Company, Goldfield Consolidated Mines Company, Combination Mines Company, George S. Nixon, and George Wingfield, Defendants,' and now on appeal to this court;

"(2) To so certify and transmit to the clerk of this court the original amended answer filed by said defendant and appellant Charles H. Botsford to the complaint in said action in said district court, and the order of said district court overruling the demurrer of said Botsford to the said complaint, and the order of said district court overruling the motion of said Botsford for a new trial in said action, and, in case said orders of said district court, or either of them, are minute orders, and are of record in said action only in the minutes of said court containing entries affecting other cases in said court, to certify and transmit to the clerk of this court, in conformity

with the provisions of sections 3862 and 3863 of the Compiled Laws, certified copies of said minutes containing said order or orders of said court;

" (3) To make up and attach together the judgment roll in said action, as required by section 3300 of the Compiled Laws, and to annex the same to the statement on appeal of the appellant Botsford herein, and also to annex thereto the demurrer filed by said Botsford to said complaint, and the order of said court overruling said demurrer, or a duly certified copy of the minutes of said court containing said order and the notice of appeal and undertaking on the appeal of said appellant Botsford from the final judgment in said action, and to number and index the said papers, and to certify them to be the original papers in said district court in said action, and to constitute the record on the said appeal to this court from said final judgment, and thereupon to transmit and return them to the clerk of this court, all as required by sections 3862 and 3863 of the Compiled Laws;

" (4) To annex the order of said district court overruling the motion for a new trial in said action of said defendant and appellant Botsford, or a duly certified copy of the minutes of said court containing said order, to the statement on motion for a new trial of said appellant Botsford herein, and also to annex thereto the notice of appeal and undertaking on the appeal of said appellant Botsford from the said order of said court, and to number and index the said papers, and to certify them to be the original papers in said district court in said action, and to constitute the record on the said appeal to this court from said order overruling said motion for a new trial, and thereupon to transmit and return them to the clerk of this court, all in conformity with sections 3862 and 3863 of the Compiled Laws. And it is hereby further ordered that said records on said appeals, or said original papers, be returned by the clerk of this court by express to the said clerk of said district court for the purpose of carrying out and executing this order, and performing the acts herein directed to be by him done or performed. And it is hereby further ordered that upon the certification and transmission of the said original papers and records on appeal by the clerk of said

district court to the clerk of this court, as aforesaid, the said
original papers and records on appeal, so returned or trans-
mitted to the clerk of this court hereunder, shall be received,
and retained by the clerk of this court as offered for filing,
until the further order of this court herein. And it is hereby
further ordered, that before the said records on appeal or
original papers are expressed to said clerk of said district court,
the clerk of this court shall file a complete list of all the said
papers now on file in this court in the order in which they
are now contained in said records on appeal, and that all of
said papers constituting said records on appeal, including any
and all papers now on file herein with the clerk of this court,
including.the clerk's certificate thereto, be and remain in the
condition in which they now are, and be returned to the clerk
of this court, as aforesaid. And it is further ordered, that all
objections hereto, of respondents herein, be and the same
hereby are, reserved for submission to and determination by
this court until the hearing and determination of the motions
of respondents to diminish the record and to dismiss said
appeals now on file herein, and that all of said matters and
motions be heard and determined together upon the hearing
of said motions. Done in open court, at Carson City, Nevada,
this 31st day of July, A. D. 1909."

Pursuant to this order the records were sent by the clerk of
this court to the clerk of the court below, and such record was
corrected subject to the conditions of the foregoing order, and
the record returned to the clerk of this court for filing. There-
after, on the 20th day of September, 1909, pursuant to agree-
ment of respective counsel, the motions to dismiss and to
strike came on for hearing. The questions presented by the
several motions were orally argued, and time thereafter taken
in which to file briefs. The question of law presented upon
these several motions, with the exception of the point raised
by counsel for respondent that the undertaking on appeal
was insufficient, are sufficiently indicated by the order above
quoted. If the order is one which should be approved by
this court, and the record as amended be directed to be filed
as the correct record on appeal, then the motions to dismiss
and to strike should, in the main, be denied, unless we find

the objections to the sufficiency of the undertaking are well taken.

The application to amend the record is in conformity with the provisions of rule 7 of this court, which reads: "For the purpose of correcting any error or defect in the transcript from the court below, either party may suggest the same, in writing to this court, and, upon good cause shown, obtain an order that the proper clerk certify to the whole or part of the record, as may be required, or may produce the same, duly certified, without such order. If the attorney of the adverse party be absent, or the fact of the alleged error or defect be disputed, the suggestion, except when a certified copy is produced at the time, must be accompanied by an affidavit showing the existence of the error or defect alleged." In the recent case of *State* v. *Hill* (decided in this court December 31, 1909), 32 Nev. 185, we said: "This court has adopted a liberal practice in the granting of applications to amend defects in transcripts; but, where no move is made to obviate a valid objection, there is no other alternative than to grant it." In the case of *Christensen* v. *Floriston Pulp and Paper Company*, 29 Nev. 552, a motion was made to dismiss the appeal "upon the ground that it affirmatively appears from the record that no notice of appeal was ever given, as required by law, and, further, that no undertaking on appeal has been executed by appellant." In that case, as in this, application was made by counsel for appellant to amend or correct the record by adding thereto the notice and undertaking on appeal, which appeared to have been mislaid and overlooked by the clerk in the preparation of the transcript on appeal. The motion to dismiss was denied, upon the ground that appellants by supplying the omission had substantially complied with the provisions of rule 7, *supra*.

We think, also, that the point raised by counsel for appellant that the respondents, by entering into numerous stipulations heretofore referred to, which reserved no right to object or except to the sufficiency of the record, waived the right to move to dismiss, or to strike upon any grounds that were not jurisdictional. (*Henningsen* v. *Tonopah & Goldfield R. R. Co.*, 32 Nev. 51; *Smith* v. *Wells Co.*, 29 Nev. 416; *Bliss* v. *Grayson*, 24 Nev. 432; *Curtis* v. *McCullough*, 3 Nev. 213; Rule 8 of

Supreme Court of Nevada.)    It manifestly appears, however, that the transcript or record on appeal from the order denying the motion for a new trial contains many papers which have no proper place in the record.    It would appear that the clerk of the lower court had certified up all of the files of the case, regardless of whether they constituted any portion of the statement on motion for a new trial or on appeal, or appear to have been used upon the hearing of the motion for a new trial.    This court, in the case of *Hoppin* v. *First National Bank*, 25 Nev. 90, said: "The respondent also asks us to strike out of the record certain affidavits in support of the motion for new trial, offered under the fourth subdivision of section 3217 of ·the General Statutes.    This motion must prevail.    The affidavits are not shown, by the indorsement of the judge or clerk, to have been read or referred to on hearing of the motion, as required by the express terms of that section, and are therefore no part of the record." (Gen. Stats. 3219; *Dean* v. *Pritchard*, 9 Nev. 232; *Albion Con. M. Co.* v. *Richmond M. Co.*, 19 Nev. 225; Comp. Laws, 3292.)

The undertaking on appeal in this case was given by the United States Fidelity and Guaranty Company, under the provisions of that certain act of the legislature entitled "An act to facilitate the giving of bonds and undertakings required by law," approved February 26, 1887 (Stats. 1887, p. 86, c. 84), as amended by Stats. 1903, p. 63, c. 42, which reads: "Any company incorporated and organized under the laws of any state of the United States for the purpose of transacting business as surety on obligations of persons, or corporations, or state, county, or township officers, and which has complied with all the requirements of the law regulating the admission of such companies to transact business in this state, shall, upon production of evidence of solvency and credit satisfactory to the judge, head of department, or other officer or officers authorized to approve such bond, be accepted as surety upon the bond of any person, or corporation, or state, county, or township officer required by the laws of this state to execute a bond, and if such surety company shall furnish satisfactory evidence of its ability to provide all the security required by law, no additional security may be exacted, but other security

may, in the discretion of the official or officials authorized to approve such bond, be required and such surety company may be released from its liability on the same terms and conditions as are by law prescribed for the release of individuals, it being the true intent and meaning of this act to enable corporations created for that purpose to become surety on bonds required, subject to all the rights and liabilities of private parties."

Upon the part of respondent it is contended that this undertaking is of no validity as an undertaking on appeal, for the reason that it is not in accordance with the provisions of the practice act (Comp. Laws, 3436, 3443), requiring the undertaking on appeal to be furnished by two sureties, who shall make and attach to the undertaking an affidavit that they are severally worth the amount for which they became surety. Upon the part of appellant it is contended that the act, the title of which is quoted *supra*, is a general act, under the provisions of which it is optional with the appellant to furnish an undertaking with two personal sureties as provided in the civil practice act, or to furnish the undertaking of a surety company which may be accepted as sole surety, and that such surety undertaking does not require an affidavit in its support. It is further contended by appellant that, even if appellant's objection to the form of the undertaking could have been considered well taken, if interposed in time, they have waived the right now to question its sufficiency.

Several appeals have come to this court with undertakings similar to that furnished in this case, in which the question of the validity of the undertaking was not interposed. In one or two cases the question was raised; but, as this court found it could affirm the judgment upon the merits, the question was not determined. The importance of this point to the practice of this state is such that we deem it should now be determined, and hence we shall disregard the contention that respondents have waived the right to question the sufficiency of the undertaking. A number of states have adopted statutes similar to, but not identical with, that under which the undertaking in this case was given, but a diligent search has only discovered a few cases in which the point has been considered. The following are all of the cases which we have been able to

find which have considered the sufficiency of an undertaking on appeal furnished by a surety company as sole surety: *Nicholas* v. *MacLean*, 98 N. Y. 458; *Earle* v. *Earle*, 49 N. Y. Super. Ct. 57; *Hurd* v. *Hannibal R. R. Co.*, 67 How. Prac. (N. Y.) 516; Id., 33 Hun (N. Y.), 109; *Cramer* v. *Tittle*, 72 Cal. 12, 12 Pac. 869; *King* v. *Pony Gold Min. Co.*, 24 Mont. 470, 62 Pac. 783. All the foregoing cases, excepting the first (98 N. Y. 458), have held such undertakings to be sufficient. The effect of the Nicholas case was to overrule or reverse the two decisions rendered a short time previous by the two New York courts of inferior appellate jurisdiction, but the opinion nowhere refers, either directly or indirectly, to these other decisions, which appear to have considered the question as fully and completely as did the court of appeals in the Nicholas case. In any event the New York statute under consideration in the cases cited did not contain a provision similar to the following, which appears in our statute: "And if such surety company shall furnish satisfactory evidence of its ability to provide all the security required by law, no additional security may be exacted."

The Montana statute, construed in the King case, *supra*, is possibly clearer in its provisions than those contained in the Nevada or California statutes, but the purpose designed to be accomplished by the act is, we think, manifestly the same. The Montana court cites the Cramer case and the Hurd case, *supra*, with approval. The California statute is more nearly like ours than either the New York or Montana statutes. In the Hurd case, *supra*, the undertaking on appeal was given by a surety company as sole surety, and the respondent moved to dismiss the appeal upon the ground that no sufficient undertaking had been filed. The court disposed of the motion in the following brief opinion: "We are of opinion that the undertaking in this case is valid. The statute is a general law, and not an amendment to the code of civil procedure in the sense of the provision of the constitution referred to. The statute is constitutional." In all of the state courts which have heretofore had occasion to pass upon these statutes the provisions of their civil practice acts were substantially the same as ours, requiring two sureties and an affidavit of the

sureties.    In every instance the validity of the statute has been upheld as a lawful exercise of the legislative power; the court of appeals of New York alone holding, in effect, that such a surety company could not become sole surety.    But, as we have heretofore pointed out, the language of the New York statute is not as broad as that of this state.    The statutes were never intended to amend or repeal the provisions of the civil practice act, providing for undertakings on appeal, but only to provide an additional method of furnishing such undertakings at the option of the appellant.    In almost every instance where an official bond is required of an officer in this state the statute requires two sureties, and the same objection here interposed would apply with equal force in the case of such bonds.

The motion to dismiss the appeal is denied.    With the exception of the miscellaneous papers not certified as having been used on the motion for a new trial, and not forming a part of the statement on motion for a new trial, the motion to strike is denied.    All miscellaneous papers not certified as having been used on the motion for a new trial, and not forming a part of such statement, are ordered stricken from the transcript on file.    With the exception of the papers so stricken, the transcript on appeal from the judgment, and from the order denying the motion for a new trial, as amended, will stand as the record on appeal in this cause.

It is so ordered.